UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **DEBRA NEDDER** | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No.: 23-CV-40012 |
| **UMASS MEMORIAL HEALTH CARE, INC., UMASS MEMORIAL MEDICAL CENTER, INC., ANDREW KARSON, M.D., JUSTIN MAY and JOHN RANDOLPH** | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Debra Nedder, by and through undersigned counsel, Donovan Hatem, LLP, brings these claims for religious discrimination, retaliation and aiding and abetting unlawful discrimination arising out of the unlawful termination of her employment as a senior manager at UMass Memorial.

## PARTIES

1. Plaintiff Debra Nedder ("Plaintiff" or "Nedder") is an individual who resides at 137 West Shore Road, Hebron, New Hampshire.

2. Defendant UMass Memorial Health Care, Inc. ("Health Care") is a corporation organized under the laws of the Commonwealth of Massachusetts with a principal place of business at One Biotech Park, 365 Plantation Street, Worcester, Massachusetts.

3. Defendant UMass Memorial Medical Center, Inc. ("the Medical Center") is a corporation organized under the laws of the Commonwealth of Massachusetts with a principal place of business at One Biotech Park, 365 Plantation Street, Worcester, Massachusetts.

(Health Care and the Medical Center may be referred to collectively herein as "UMass Memorial.")

4. Defendant Andrew Karson, M.D. ("Karson") is an individual and, upon information and belief, a resident of Massachusetts, now or formerly employed by UMass Memorial as its Chief Medical Officer.

5. Defendant Justin May ("May") is an individual and, upon information and belief, a resident of Massachusetts, now or formerly employed by UMass Memorial as its Vice President of Labor and Employee Relations.

6. Defendant John Randolph ("Randolph") is an individual and, upon information and belief, a resident of Massachusetts, now or formerly employed by UMass Memorial as its Vice President and Chief Compliance Officer.

**JURISDICTION & VENUE**

7. This action for religious discrimination and retaliation, brought pursuant to Title VII of the Civil Rights Act ("Title VII"), arises out plaintiff's former employment and unlawful termination by UMass Memorial. Plaintiff was wrongfully terminated for exercising her sincerely held religious beliefs; and her request for an accommodation was wrongfully denied. This Court has original jurisdiction over claims of unlawful discrimination pursuant to Title VII.

8. Additionally, there is diversity jurisdiction under 28 U.S.C. § 1332. The amount in controversy exceeds the jurisdictional amount of $75,000. Plaintiff is a resident of the State of New Hampshire; and all defendants have a principal place of business or reside in the Commonwealth of Massachusetts.

9. On May 17, 2022, Nedder filed a complaint against defendants with the Massachusetts Commission against Discrimination ("MCAD") and with the Equal Employment Opportunity Commission ("EEOC") for unlawful employment practices. More than one hundred and eighty (180) days have passed since the filing of the administrative complaint.

10. On December 5, 2022, at Plaintiff's request, the EEOC dismissed the administrative proceeding before making a finding and issued a "Right to Sue" letter. Pursuant to 42 U.S.C. § 2000e–5(f)(1), Plaintiff hereby exercises her right to bring this action for money damages.

11. Venue is proper in this Court because the actions and failures which are the subject of Plaintiff's claims occurred in the Commonwealth of Massachusetts.

## **FACTS**

12. The UMass Memorial Health system comprises multiple hospitals, medical groups, healthcare facilities and joint ventures in Massachusetts, and has over 14,000 employees.

13. Until her discharge, Ms. Nedder was employed as the Associate Vice President of Compliance and Chief Compliance Officer for UMass Memorial Health Revenue Cycle and UMass Memorial Medical Group. At the time of her discharge, Ms. Nedder reported to Mr. Randolph.

14. Plaintiff was involuntarily terminated from her position on December 2, 2021 after her request for a religious exemption from UMass Memorial's COVID-19 vaccination policy was wrongfully denied.

15. Nedder had been continuously employed by UMass Memorial from 2010 until the date of her termination. During the course of her employment, Ms. Nedder was promoted

multiple times, initially from Compliance Director to Senior Director of Compliance, then to Chief Compliance Officer and ultimately to Associate Vice President of Compliance and Chief Compliance Officer for the UMass Memorial Health Revenue Cycle and UMass Memorial Medical Group, the position she held at the time of her unlawful termination.

16. In the last evaluation received prior to her termination, Plaintiff's superiors commended her exemplary performance and competence.

17. Nedder was not a healthcare provider or caregiver and was not required to interact with patients in the conduct of her regular job responsibilities.

18. After the COVID-19 pandemic became widespread in early 2020, Nedder began performing her job functions remotely, predominantly from her home, which was then in Westwood, Massachusetts. Plaintiff carried out and performed her job responsibilities remotely throughout 2020 and 2021.

19. On or about September 2021, Defendants adopted a vaccine mandate policy entitled, "COVID-19 Immunization." A true and correct copy of the policy is attached hereto as **EXHIBIT A**. The Policy states that, "all Workforce Members are required to be vaccinated against COVID-19 or obtain an approved exemption."

20. The policy further provides that Defendants will "consider and grant medical/disability and religious exemption requests," and that "[t]he process for both exemptions will be in accordance with state and federal law." However, the policy did not identify any procedures that would be applied to evaluate medical, disability or religious exemption requests.

21. Pursuant to the policy, all so-called Workforce Members, including the Plaintiff, were required to obtain a first dose of the vaccination by November 1, 2021, absent an approved exemption.

Plaintiff's Religious Exemption Request

22. On or about October 7, 2021, Nedder completed and submitted a COVID-19 Vaccination Religious Exemption Form to Defendants.

23. The pre-printed body of the form stated, in relevant part: "UMMH [UMass Memorial Health] may provide a religious exemption if an employee demonstrates that receiving a COVID-19 vaccine violates a sincerely held religious belief, practice, or observance," and that "[i]f an exemption is granted, Human Resources and the employee's manager will determine whether an accommodation can be granted given the employee's role and their exemption from vaccination."

24. In her Vaccination Religious Exemption Form submission, Nedder explained that she follows "biblical teachings," and that, "I have held religious beliefs my entire adult life. I recently completed a four-year education for ministry program from 2015 – 2019." Together with the Exemption Form, Ms. Nedder submitted a personal statement further detailing her religious beliefs and the reason for her exemption request.

25. In her Vaccination Religious Exemption Form submission, Nedder further stated that while she had received a vaccination within the past ten years, her experience "reinforced [her] religious beliefs against vaccines of any kind."

26. Plaintiff's religious beliefs, as explained in her Exemption Form submission, constitute *bona fide* religious beliefs or practices that were sincerely held at all relevant times.

27. On or about October 27, 2021, Defendant's Exemption Review Committee denied Nedder's request for an exemption from its COVID-19 Immunization vaccination policy.

28. On November 5, 2021, Plaintiff received a letter from UMass Memorial stating that "[u]nvaccinated caregivers who have not received an approved . . . religious exemption and have not received either the one-shot Johnson & Johnson vaccine or a first dose of either the Pfizer or Moderna vaccine by December 1, [2021], will lose their jobs and be ineligible to work at UMass Memorial Health." The letter further informed Plaintiff that because she was not vaccinated, she would be placed on "unpaid suspension beginning on November 16, 2021," and ultimately she would "lose [her] job on December 2, 2021." A true and correct copy of the November 5, 2021 letter is attached hereto as **EXHIBIT B**.

29. On the same day, November 5, 2021, the Centers for Medicare & Medicaid Services ("CMS") issued its interim final rule setting forth the requirements that Medicare- and Medicaid-certified providers were required to meet in order to participate in the Medicare and Medicaid programs. The interim final rule requires such providers to "ensure that their staff are fully vaccinated for COVID-19" but also imposes an obligation on employers to "comply with applicable Federal anti-discrimination laws and civil rights protections."

30. Defendant May informed Plaintiff that her religious exemption was denied, in part, because she had received a vaccination every year since 2010. Nedder advised May and the Defendants that they had an incorrect record of her vaccination history, namely, that she had not been vaccinated since 2019, when she experienced a severe adverse reaction to the flu shot that solidified her sincere religious beliefs against vaccination.

Nevertheless, Defendants subsequently took the position that regardless of the error in its record of her vaccine history, the Committee's denial of her religious exemption would remain unchanged.

31. Defendant Karson stated to Nedder that the Exemption Review Committee was unlikely to approve any religious exemption requests if the employee had ever received a vaccine, suggesting to Plaintiff that, as a result, she would be denied a religious exemption.

32. During a meeting on November 4, 2021, defendant Randolph, who was Plaintiff's immediate supervisor, told Nedder that she had to get vaccinated, stating, "you know what is expected of you." Mr. Randolph further stated: "I don't care about your religion."

33. On several occasions, Nedder requested meetings with senior executives of UMass Memorial, including its general counsel, to further explain her religious exemption request and to seek a reasonable work accommodation.

34. Specifically, Ms. Nedder attempted to discuss the denial of her exemption request with Kate Eshghi, who was then UMass Memorial's Senior Vice President and General Counsel. However, Ms. Eshghi refused to discuss the denial of Plaintiff's exemption request, stating, "[t]his is not an appropriate communication. Please follow the process that has been established for all caregivers. If your attorney would like to address a communication to the legal department, he may do so."

35. On multiple occasions, Ms. Nedder requested a work accommodation that would have allowed her to perform her job responsibilities remotely, which she had been doing since March 2020; and, when working on-site, to wear personal protective equipment ("PPE").

Ms. Nedder also offered to change her status from a full-time employee to an independent contractor.

36. Defendants rejected all of these proposals and likewise refused to engage in a dialogue to discuss a reasonable work accommodation that would have allowed Ms. Nedder to continue to perform her essential job functions.

37. The Exemption Review Committee did not solicit any further information or documentation from Ms. Nedder before denying her religious exemption request. In fact, the Committee intentionally disregarded documentation that directly contradicted the false information it relied upon to render its decision. The Review Committee's denial of her exemption request failed to account for Plaintiff's sincerely held religious beliefs and practices.

38. The Exemption Review Committee did not engage in an interactive process with Ms. Nedder to evaluate her religious exemption request. The committee also failed to consider the strength or sincerity of Plaintiff's religious beliefs.

39. The Exemption Review Committee refused to consider, or otherwise discuss any reasonable accommodation that would have allowed Plaintiff to perform the essential functions of her job.

40. Because of her sincerely held religious beliefs, Ms. Nedder did not get a COVID-19 vaccination prior to December 1, 2021.

41. By a letter dated December 2, 2021 ("Letter of Termination"), UMass Memorial terminated Nedder. A true and correct copy of the Letter of Termination is attached hereto as **EXHIBIT C**.

42. UMass Memorial acted as a state agent when it enacted the COVID-19 vaccination mandate because it sought to exercise powers traditionally exclusively reserved to the state: namely, to control the lives of employees outside of the workplace by compelling them to receive the COVID-19 vaccination.

Plaintiff Raised Concerns about Defendants'
<u>Failures to Timely Reimburse the Federal Government</u>

43. Upon information and belief, Nedder was terminated from her position in retaliation for her raising concerns about Defendants' systemic failure to timely reimburse the federal government for improperly submitted and paid charges.

44. Specifically, during the course of her employment, Nedder was involved in a review of a unit of Defendants, Health Alliance, that owed substantial funds to the federal government.

45. Nedder became aware that Health Alliance was extremely late in reimbursing monies owed to the federal government.

46. Upon information and belief, a fellow employee, Wendy Chartrand, was the person in charge of the compliance office of Health Alliance at the time.

47. UMass Memorial's legal department did not permit Plaintiff to take administrative action against an employee who had first-hand knowledge of the delay in repaying the federal government, purportedly because it feared taking such action would be perceived as retaliation against the employee in that UMass Health had not reimbursed the federal government.

48. Upon information and belief, Ms. Chartrand became upset with Plaintiff's findings regarding the reimbursement delay and complained to her superior, Mr. Randolph, about them.

49. In response, Nedder informed Mr. Randolph of her concerns regarding repeated compliance issues, including improper billings, that had occurred under Ms. Chartrand's watch.

50. On or about August 18, 2021, Nedder met with the Human Resources department after Ms. Chartrand had filed a complaint against her.

51. At one meeting, Nedder informed Human Resources that the accusations made by Ms. Chartrand were false and likely made to retaliate against her for raising concerns about the multiple compliance issues and reimbursement delays under Ms. Chartrand's watch (*i.e.*, her performance). Upon information and belief, as of the date of Plaintiff's termination, this issue was not formally resolved.

52. Upon information and belief, Defendant's termination of Nedder was, in substantial part, in retaliation for her raising concerns with the defendants concerning multiple compliance issues and their systemic failure to timely reimburse the federal government for improperly submitted and paid charges.

Plaintiff Raised Concerns about Defendant's COVID-19
<u>Immunization Policy and Voted against its Adoption</u>

53. Part of Nedder's job responsibilities included the review and drafting of UMass Memorial's policies and procedures. Immediately prior to her termination, Plaintiff was a member of the System Policy Committee, which served to review and approve defendants' policies.

54. On or about September 13, 2021, the UMass Memorial Health's System Policy Administrator requested, via email, that the System Policy Committee vote on a vaccine mandate policy entitled, "COVID-19 Immunization."

55. Upon information and belief, the Core Leadership Team had already determined that it would approve the policy at the time it was transmitted to the System Policy Committee for review, in contravention of the normal policy approval process.

56. The COVID-19 Immunization Policy mandated that, "all Workforce Members are required to be vaccinated against COVID-19 or obtain an approved exemption."

57. The policy further stated that UMass Memorial would "consider and grant medical/disability and religious exemption requests," and that the process for both exemptions would be in accordance with state and federal law.

58. At the time the policy was submitted for review, it did not identify any procedures that would be applied to evaluate exemption requests.

59. The COVID-19 Immunization Policy further stated that, "[i]f an exemption can be accommodated, the Workforce Member will be required to" wear an N95 respirator while in UMass Memorial Health facilities, socially distance while eating, and undergo COVID-19 testing.

60. As a member of the System Policy Committee, Nedder voted "no" on the COVID-19 Immunization Policy because she believed that it did not adequately address risks, it did not contain sufficient information and because it failed to address natural immunity. Nedder also voted against adoption of the policy, as drafted, because it did not adequately articulate the procedure for addressing requests for accommodation for medical reasons, disabilities and religious beliefs.

61. Nedder's vote against the COVID-19 Immunization policy was cast objectively in her professional capacity, and not influenced by her personal beliefs or circumstances.

62. Subsequently, defendant Karson called to inquire with Nedder why she had voted "no."

63. Nedder explained that she thought the policy posed an undue risk to the organization and was incomplete, especially in regard to the exemption review process.

64. Upon information and belief, Defendant's termination of Nedder was, in substantial part, in retaliation for her raising concerns with the defendants concerning UMass Memorial's COVID-19 vaccination policy prior to the policy's adoption and implementation.

## COUNT I
### (Religious Discrimination – Violation of Title VII)

65. Plaintiff hereby repeats and incorporates by reference all allegations made in Paragraphs 1 through 64 as if fully set forth herein.

66. Title VII prohibits employers from "discriminat[ing] against any individual with respect to [their] compensation, terms, conditions, or privileges of employment because of such individual's. . . . religion." 42 U.S.C. § 2000e-2(a)(1).

67. The EEOC has issued guidance for employers regarding religious exemptions to COVID-19 vaccination mandates. The guidance explains that, "under Title VII, an employer should assume that a request for religious accommodation is based on sincerely held religious beliefs," and that "[t]he employee's sincerity in holding a religious belief is largely a matter individual credibility."

68. The EEOC's guidance also provides that, "[a]lthough prior inconsistent conduct is relevant to the question of sincerity, an individual's beliefs- or degree of adherence- may change over time and, therefore, an employee's newly adopted or inconsistently observed practices may nevertheless be sincerely held." The EEOC further instructs employers to "evaluate religious objections on an individual basis" through a factual inquiry.

69. Defendants had a duty to offer a reasonable accommodation to resolve the conflict between Nedder's sincerely held religious beliefs and a condition of her employment

12

unless the accommodation would have created an undue hardship for the conduct its business.

70. Once an employee demonstrates that a condition of employment conflicts with their religious belief, the burden shifts to the employer to show that it offered a reasonable accommodation or, if it did not, that doing so would have resulted in undue hardship.

71. The COVID-19 Vaccination Religious Exemption Form submitted by Nedder demonstrated how the vaccination policy violated her sincerely held religious beliefs.

72. Defendants denied Plaintiff's exemption request without evaluating her religious objections through a factual inquiry and without offering a reasonable accommodation.

73. Defendants failed to show that an accommodation would have resulted in undue hardship in the conduct of its business.

74. In fact, reasonable accommodations were available and those accommodations would not have inflicted any hardship on defendants. For example, Nedder had been working remotely at the time of her termination and was willing to continue doing so. Further, UMass Memorial had a policy encouraging similarly situated employees to work remotely.

75. Defendants failed to engage in a meaningful dialogue, interactive process and/or appeal when Nedder informed them that the Exemption Review Committee was relying on incorrect information in denying her religious exemption request.

76. Plaintiff was ready, willing and able to abide by any reasonable accommodation requested by Defendants, including abiding by the safety precautions that were already in place.

77. When Nedder informed Defendants that their vaccination mandate violated her sincerely held religious beliefs and practices and applied for a religious exemption, Defendants' response was to make an ultimatum that she abandon her sincerely held religious beliefs or face termination.

78. Plaintiff's sincerely held religious beliefs prevented her from adhering to UMass Memorial's COVID-19 vaccination mandate.

79. Defendants failed to comply with Title VII and the EEOC's guidance when it terminated Nedder.

80. As a result of Defendants' religious discrimination in violation of Title VII, Plaintiff suffered an adverse employment action when she was wrongfully terminated from her employment.

## COUNT II
### (Violation of M.G.L. c. 151B § 4 (1A))

81. Plaintiff hereby repeats and incorporates by reference all allegations made in Paragraphs 1 through 80 as if fully set forth herein.

82. Defendants' failure to engage in a dialogue regarding reasonable accommodations regarding Ms. Nedder's request for a religious exemption to its COVID-19 vaccine mandate caused her to choose between violating her sincerely held religious beliefs and maintaining her employment.

83. Massachusetts General Laws, chapter 151B, § 4 (1A) prohibits an employer from forcing employees to violate their sincerely held religious beliefs without attempting to accommodate those beliefs.

84. As set forth above, UMass Memorial could have accommodated Plaintiff's sincerely held religious beliefs without undue burden or expense.

85. However, defendants refused to consider making a reasonable accommodation for Plaintiff's sincerely held religious beliefs and practices.

86. Plaintiff suffered an adverse employment action when she was terminated by UMass Memorial because her sincerely held religious beliefs prevented her from adhering to its COVID-19 vaccination mandate.

87. As a result of the defendants' religious discrimination, in violation of Massachusetts General Laws, chapter 151B, § 4 (1A), Plaintiff suffered an adverse employment action when she was wrongfully terminated from her employment.

## COUNT III
### (Retaliation for Exercising Sincerely Held Religious Beliefs)

88. Plaintiff hereby repeats and incorporates by reference all allegations made in Paragraphs 1 through 87 as if fully set forth herein.

89. Nedder was engaged in a protected activity when she requested an accommodation for her sincerely held religious beliefs.

90. Defendants took adverse action against Plaintiff when they terminated her on December 2, 2021 after she refused to receive a vaccination against COVID-19 based on her sincerely held religious beliefs.

91. The adverse employment action, *i.e.*, termination, would not have occurred but for a retaliatory motive against Plaintiff.

92. Defendants' actions violated the protections afforded to Plaintiff under applicable federal and state law.

93. As a result of Defendants' retaliation for Nedder's exercise of sincerely held religious beliefs, Plaintiff suffered an adverse employment action when she was wrongfully terminated from her employment.

## COUNT IV
### (Retaliation for Raising Defendants' Systemic Failure to Timely Reimburse the Federal Government)

94. Plaintiff hereby repeats and incorporates by reference all allegations made in Paragraphs 1 through 93 as if fully set forth herein.

95. Nedder was engaged in protected activity when she objected to Defendant's chronically late reimbursement to the federal government of improper charges for patient treatment. In raising these concerns and objections, and in seeking to remedy the Defendant's improper practices and conduct, Plaintiff was upholding the highest standards of institutional ethics and seeking to prevent a violation of federal law.

96. Upon information and belief, Plaintiff's request for a religious exemption from Defendant's COVID-19 vaccine mandate presented the Defendant with an opportunity to terminate her employment in retaliation for her reporting on its failures to reimburse the federal government.

97. The adverse employment action, *i.e.*, termination, would not have occurred but for a retaliatory motive against Plaintiff for her exercise of this protected conduct.

98. Defendants' actions violated the protections afforded to Plaintiff under applicable federal and state law.

99. As a result of Defendants' retaliation for pointing out UMass Memorial's failures to timely reimburse the federal government, Plaintiff suffered an adverse employment action when she was wrongfully terminated from her employment.

## COUNT V
### (Retaliation for Raising Objections to Defendant's COVID-19 Vaccination Policy)

100. Plaintiff hereby repeats and incorporates by reference all allegations made in Paragraphs 1 through 99 as if fully set forth herein.

101. Ms. Nedder was engaged in a protected activity when she opposed Defendant's COVID-19 vaccination mandate because, in her professional opinion, it did not adequately mitigate risk, contain sufficient information; address natural immunity; or set forth a process for addressing exemption requests for medical reasons, disabilities and/or religious beliefs.

102. The adverse employment action, *i.e.,* termination, would not have occurred but for a retaliatory motive against Plaintiff for her exercise of this protected conduct.

103. Defendants' actions violated the protections afforded to Plaintiff under applicable federal and state law.

104. As a result of Defendants' retaliation for Plaintiff's raising objections to its COVID-19 vaccination policy, Plaintiff suffered an adverse employment action when she was wrongfully terminated from her employment.

## COUNT VI
### (Aiding and Abetting – Individual Defendants)

105. Plaintiff hereby repeats and incorporates by reference all allegations made in Paragraphs 1 through 104 as if fully set forth herein.

106. At all relevant times, each of the individual defendants, Karson, May and Randolph were senior executives of UMass Memorial, and held supervisory and/or superior administrative positions to Nedder.

107. Each of the individual defendants, Karson, May and Randolph, could have prevented UMass Memorial from violating Nedder's right to be free from religious discrimination. Instead, the individual defendants aided and abetted UMass Memorial in acts of unlawful discrimination, and in refusing to engage in a dialogue to arrive at reasonable, and easily available accommodation that would have allowed Nedder to retain her position as

Associate Vice President of Compliance and Chief Compliance Officer for UMass Memorial Health Revenue Cycle and UMass Memorial Medical Group.

108. The individual defendants, Karson, May and Randolph, also aided and abetted Health Care and/or the Medical Center in retaliating against Plaintiff as a result of her exercise of sincerely held religious beliefs, for reporting on UMass Memorial's questionable, and possibly illegal, delays in reimbursing the federal government, and for objecting to the defendants' COVID-19 vaccination policy, all of which are protected activities.

109. The actions of the individual defendants, Karson, May and Randolph, violated the protections afforded to Plaintiff under applicable federal and state law.

110. As a result of the individual defendants' aiding and abetting UMass Memorial, Ms. Nedder has suffered harm.

## **PRAYERS FOR RELIEF**

**WHEREFORE**, the Plaintiff, Debra Nedder, hereby respectfully prays that this Honorable Court:

(a) Enter Judgment in her favor and against UMass Memorial Health Care, Inc. on each count asserted against it in the Complaint;

(b) Enter Judgment in her favor and against UMass Memorial Medical Center, Inc. on each count asserted against it in the Complaint;

(c) Enter Judgment in her favor and against each of the individual defendants, Karson, May and Randolph on Count VI of the Complaint;

(d) Award Plaintiff her costs of action, including reasonable attorneys' fees; and

(e) Enter such other and additional relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on each count and each issue so triable.

                                        Respectfully submitted,

                                        **DEBRA NEDDER**

                                        By her attorneys,

                                        /s/ *Jon C. Cowen*
                                        Darrell Mook (BBO No. 546754)
                                        *dmook@donovanhatem.com*
                                        Jon C. Cowen (BBO No. 552961)
                                        *jcowen@donovanhatem.com*
                                        **DONOVAN HATEM, LLP**
                                        53 State Street, 8th Floor
                                        Boston, MA 02109
                                        T: (617) 406-4500

Dated: February 3, 2023

4878-0098-9774, v. 1