UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBRA NEDDER,<br><br>       Plaintiff,<br><br>v.<br><br>UMASS MEMORIAL HEALTH CARE, INC.,<br>UMASS MEMORIAL MEDICAL CENTER, INC.,<br>ANDREW KARSON, M.D., JUSTIN MAY and<br>JOHN RANDOLPH,<br><br>       Defendants. | C.A. No. 4:23-cv-40012-MRG |

## MAEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS ANDREW KARSON, M.D., JUSTIN MAY, AND JOHN RANDOLPH'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and Local Rule 7.1, Defendants Andrew Karson, M.D. ("Dr. Karson"), Justin May ("May"), and John Randolph ("Randolph") (collectively, "Individual Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss (the "Motion") Plaintiff's claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As set forth below, the Individual Defendants are not proper defendants to this action as Plaintiff fails to allege specific facts to support her claims against them and instead relies solely on conclusory allegations.

Counts V and Count VI against Individual Defendants should be dismissed because they fail to state a claim for relief.

## BACKGROUND[1]

Plaintiff Debra Nedder ("Plaintiff" or "Nedder") filed her Complaint and Demand for Jury Trial against UMass Memorial Health Care, Inc. ("Health Care"), UMass Memorial Medical Center, Inc. ("Medical Center"), Dr. Karson, May, and Randolph on February 3, 2023. (Dkt. No. 1). On March 28, 2023, all defendants filed a Motion for More Definite Statement, which the Court granted on March 12, 2024. (Dkt. Nos. 18 and 27). On April 11, 2024, Plaintiff filed her First Amended Complaint (the "Complaint"), alleging various claims against Health Care and Medical Center, and alleging Violation of M.G.L. c. 151B, §4(4) against all Defendants (including Dr. Karson, May, and Randolph) (Count V), and Violation of M.G.L. c. 151B, §4(5) against Dr. Karson, May, and Randolph (Count VI).

Plaintiff worked for Medical Center from 2010 until her termination on December 2, 2021. *See* Complaint, ¶¶13-15. Plaintiff held the position of Associate Vice President of Compliance and Chief Compliance Officer, UMass Memorial Medical Group & Revenue Cycle, Corporate Compliance Department, at the time of her termination. *See id.*, ¶15. During the relevant time period, Dr. Karson was the Chief Medical Officer of Medical Center. *See id.*, ¶4. May is employed by Medical Center as Vice President of Labor and Employee Relations, and Randolph is employed by Medical Center as a Vice President and Chief Compliance Officer. *See id.*, ¶¶5-6.

In September 2021, Medical Center, and all other entities within the UMass Memorial Health Care System[2] adopted a vaccine mandate entitled COVID-19 Immunization Policy (the

---

[1] In light of the Court's standard of review on a motion to dismiss under Rule 12(b)(6), Individual Defendants treat the facts alleged in Plaintiff's Complaint as true for the purposes of the Motion and this Memorandum. Individual Defendants reserve the right to challenge the veracity of those allegations in this or in any other proceeding in the future, and further reserve the right to offer affirmative defenses with respect to all of those allegations.

[2] UMass Memorial Health Care System comprises multiple hospitals, medical groups, and healthcare facilities in Massachusetts. *See* Complaint, ¶12.

"Policy"). *See id.*, ¶19 & Exh. A to Complaint. Plaintiff was on the Policy Committee, which developed and approved the Policy. *See* Complaint, ¶¶53-54. Plaintiff voted "no" on the Policy. *See id.*, ¶60.

The Policy required that all Medical Center employees receive a Covid-19 vaccination or obtain an approved exemption. *See id.*, ¶19. The Policy required that all Medical Center employees receive the first dose of the vaccination by November 1, 2021, absent an approved exemption. *See id.*, ¶21. The Policy further provided that Medical Center would consider and grant medical or religious exemption requests in accordance with state and federal law. *See id.*, ¶57 & Exh. A to Complaint, p. 2. The Policy applied to all "employees, contractors, volunteers, vendors, trainees . . . members of the Medical Staff . . . and other persons employed, credentials or under the direction and control" of all employees of entities that are directly or indirectly owned by UMass Memorial Health Care ("UMMH"), "whether or not they are paid by UMMH." Complaint, Exh. A, p. 1. The Policy included that only employees (including full-time, part-time, temporary, or *per diem* employment) will be considered for an exemption, and "*contractors*, volunteers, and vendors are not eligible for exemption from the COVID-19 vaccine." *Id.* (emphasis added). Moreover, the Policy included criteria and procedures for reviewing obtaining an exemption, including:

> Medical/Disability and Religious exemption requests will be considered for Exemption Eligible Workforce Members only. Consideration will be by system-level, multidisciplinary committees. All requests for exemption ***will be de-identified such that the committees only review request with anonymized information***. The process for both exemptions will be in accordance with state and federal law.

*Id.*, p. 2, ¶2 (emphasis added). The Policy further provided that any exemption eligible workforce member (such as Plaintiff) who failed to comply with the Policy and/or the conditions of their exemption "will be subject to successive levels of discipline up to and including termination of employment." *Id.*, p. 2, ¶7.

3

On or about October 7, 2021, Plaintiff submitted a Covid-19 Vaccination Religious Exemption Form to be exempt from the Covid-19 vaccination requirements of the Policy. *See* Complaint, ¶22. On or about October 27, 2021, the Exemption Review Committee (the "Committee") anonymously reviewed and denied Plaintiff's request for an exemption from the Policy. *See id.*, ¶28, Exh A, p. 2, ¶2. The Centers for Medicare & Medicaid Services ("CMS") issued its interim final rule on November 5, 2021, requiring that in order to participate in Medicare and Medicaid programs, providers (such as Medical Center) must ensure that their staff are fully vaccinated for Covid-19. *See* Complaint, ¶29. Also on November 5, 2021, Plaintiff received a letter notifying her that all caregivers who have not received an approved exemption and are not vaccinated by December 1, 2021 will lose their jobs. *See id.*, ¶28. The letter further informed Plaintiff that if she did not receive the first dose of the vaccine by November 15, 2021, she would be placed on unpaid suspension beginning November 16, 2021. *See id.*, ¶28 & Exh. B to Complaint.

May informed Plaintiff that her religious exemption was denied, in part, due to her vaccination history since 2010. *See* Complaint, ¶30. After Plaintiff's request for a re-review, the Committee upheld its denial of Plaintiff's religious exemption request for reasons other than her vaccination history. *See id.* Plaintiff did not get a Covid-19 vaccination pursuant to the Policy prior to December 1, 2021. *See id.*, ¶40. Pursuant to its Policy, on December 2, 2021, Medical Center terminated Plaintiff because she did not receive the required vaccination by December 1, 2021. *See id.*, ¶41 & Exh. C to Complaint.

## ARGUMENT

**I.  Standard of Review.**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all

well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. *See Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019) (citations omitted). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). The Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). The Court must also determine "whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Morales-Cruz*, 676 F.3d at 224).

**II.** **Plaintiff's claim for violation of M.G.L. c. 151B, §4(4) against Dr. Karson, May, and Randolph fails to state a claim upon which relief can be granted.**

Plaintiff cannot establish any violation of M.G.L. c. 151B, §4(4) against Individual Defendants (Count V) and her claims in Count V should be dismissed for failure to state a claim upon which relief can be granted. M.G.L. c. 151B, §4(4) prohibits retaliation by making it unlawful for "any person 'to discharge, expel or otherwise discriminate against any person because he has opposed any practices' **forbidden under G.L. c. 151B**." *See Abramian v. President & Fellows of Harvard Coll.*, 432 Mass. 107, 121 (2000) (quoting M.G.L. c. 151B, §4(4)) (emphasis added). To survive a *prima facie* case of retaliation under 151B, Plaintiff must show: (1) she "engaged in protected conduct" by engaging in or opposing alleged wrongful conduct under M.G.L. c. 151B; (2) that Defendants subjected her to an adverse employment action; and (3) there is a "causal connection" between her protected conduct and an adverse employment action by

5

Defendants. *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 707 (2011) (quoting *Mole v. Univ. of Mass.*, 442 Mass. 582, 591-92 (2004)); *Noviello v. City of Bos.*, 398 F.3d 76, 88 (1st Cir. 2005). The employer's desire to retaliate against the employee "must be shown to be a determinative factor in its decision to take adverse action." *Psy-Ed Corp.*, 459 Mass. at 707 (citing *See Abramian*, 432 Mass. at 121).

### A. Plaintiff does not allege protected conduct under M.G.L. c. 151B as to Individual Defendants.

Plaintiff does not allege any protected conduct under M.G.L. c. 151B as to Dr. Karson, May, or Randolph, and her claim fails on the first element. Plaintiff's retaliation claim is based on her alleged "protected activity when she opposed Defendant's COVID-19 vaccination mandate." *See* Complaint, ¶101. Indeed, she claims that she suffered an adverse action (termination) due to "Defendants' retaliation for Plaintiff's raising objections to its COVID-19 vaccination policy," *See id.*, ¶105.

However, Plaintiff's purported objection to the Policy by voting "no" is not protected activity under M.G.L. c. 151B. *See* M.G.L. c. 151B, §4(4) (prohibiting retaliation by making it unlawful for "any person 'to discharge, expel or otherwise discriminate against any person because "he has opposed any practices forbidden *under this chapter*") (emphasis added). *See also Abramian*, 432 Mass. at 121. Plaintiff's voting "no" on a Policy as a member of the Policy Committee is not an opposition a discriminatory practice and is not a "practice[] forbidden" under M.G.L. c. 151B. *See* Complaint, ¶¶53-54, 60. *See also* M.G.L. c. 151B, §4; *Gudava v. Ne. Hosp. Corp.*, 440 F. Supp. 3d 49, 60 (D. Mass. 2020) (finding that opposing an internal practice is not actionable). Indeed, an employee who "who simply disagrees with her employer's policy decisions, may not seek redress in the courts." *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 91 (1st Cir. 2016) (quoting *Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 404

6

Mass. 145, 151 (1989)). Plaintiff did not file a complaint or otherwise report any activity of discrimination, harassment, retaliation, or any other prohibited conduct under M.G.L. c. 151B. Plaintiff simply voted "no" on the Policy while serving on the Policy Committee that was asked to vote on the Policy. None of this conduct is protected activity and is not subject to any protections under M.G.L. c. 151B, and this claim should be dismissed.

Plaintiff has not alleged any other protected conduct as to Individual Defendants. Plaintiff does not allege that her purported requests for a work accommodation that "would have allowed her to perform her job responsibilities remotely", "to wear personal protective equipment ("PPE") and to "change her status from full-time employee to an independent contractor" were made to Dr. Karson, May, or Randolph (or that any of the individuals were aware that any of these alleged requests were made). *See* Complaint, ¶35.[3] She further does not allege which of the "Defendants" rejected these alleged proposals. *See id.*, ¶36. Plaintiff alleges in Count V that she engaged in protected activity when she "raised her concerns about her reasonable accommodation denial to senior management." *See* Complaint, ¶102. However, Plaintiff alleges that she attempted to discuss the denial of her exemption with "senior executives" including the Vice President and General Counsel, not any of the individual Defendants. *See id.*, ¶¶33-34. There are no allegations that Individual Defendants had any knowledge of this purported activity. To the extent that she alleges it was the Exemption Review Committee, she has not alleged how the anonymous review and decision of her exemption request could implicate Individual Defendants. *See id.*, ¶¶37-39.

---

[3] Plaintiff further has not alleged how any of these were reasonable accommodations. Indeed, the Policy clearly states that contractors are not eligible for a religious or medical exemption from the COVID-19 vaccine. *See* Complaint, Exh. A, p. 1. Further, protocols (such as wearing PPE) were allowed when a religious or medical exemption is *approved*. *See id.*, p. 2 (emphasis added). There is nothing in the Policy that exempts remote workers from needing to comply with the Policy. *See id.* Plaintiff does not allege how these would have been reasonable accommodations that would have allowed her to avoid receiving the Covid-19 vaccination.

7

Plaintiff has failed to allege any protected conduct as to Dr. Karson, May, or Randolph, and she fails to state a claim for retaliation upon which relief can be granted.

### B. Plaintiff does not allege an adverse action as to Dr. Karson, May, or Randolph.

Plaintiff has not alleged that she suffered any adverse action by Dr. Karson, May, or Randolph for opposing practices forbidden under M.G.L. c. 151B. *See Abramian*, 432 Mass. at 121; *Noviello*, 398 F.3d at 88. In fact, Plaintiff hardly makes any factual allegations concerning any of these Individual Defendants, and none of those allegations plead any adverse action by them.

The only factual allegation in Plaintiff's Complaint against May is that:

> Defendant May informed Plaintiff that her religious exemption was denied, in part, because she had received a vaccination every year since 2010. Nedder advised May and the [non-specified] Defendants that they had an incorrect record of her vaccination history, namely, that she had not been vaccinated since 2019, when she experienced a severe adverse reaction to the flu shot that solidified her sincere religious beliefs against vaccination. Nevertheless, Defendants subsequently took the position that regardless of the error in its record of her vaccine history, the Committee's denial of her religious exemption would remain unchanged.

Complaint, ¶30. Plaintiff does not allege that May was on the Committee or was involved in any decision (which he was not); May only relayed the results (that was anonymously decided) to Plaintiff. Such allegation is wholly insufficient to implicate May in any retaliation whatsoever and this claim fails as a matter of law.

Similarly, there are only two paragraphs with factual allegations related to Dr. Karson:

- "Defendant Karson stated to Nedder that the Exemption Review Committee was unlikely to approve any religious exemption requests if the employee had ever received a vaccine, suggesting to Plaintiff that, as a result, she would be denied a religious exemption." (Complaint, ¶31); and

- "Subsequently, defendant Karson called to inquire with Nedder why she had voted 'no' [on the COVID-19 Immunization Policy]" (Complaint, ¶62).

8

As discussed above, Plaintiff and Dr. Karson were on the Policy Committee and were asked to vote on the Policy. Plaintiff's vote "no" on the Policy is not protected activity (*see* Section II.A., *supra*), and Dr. Karson's inquiry, as a member of the Policy Committee, is not an adverse action or retaliatory action either (and there is no protected activity to establish a causal connection). Moreover, Dr. Karson's alleged statement that the Committee was unlikely to approve religious exemption requests if the employee had ever received a vaccine does not establish any adverse action, where Plaintiff does not allege that Dr. Karson knew that Plaintiff had been previously vaccinated and the Committee review was anonymous. *See* Complaint, Exh A, p. 2. Plaintiff has failed to allege sufficient facts to demonstrate protected activity and adverse action as to Dr. Karson.

Additionally, the few allegations against Randolph do not allege any protected activity or adverse action by Randolph either. The only factual allegations in Plaintiff's Complaint concerning Randolph are:

- "During a meeting on November 4, 2021, defendant Randolph, who was Plaintiff's immediate supervisor, told Nedder that she had to get vaccinated, stating, 'you know what is expected of you.' Mr. Randolph further stated: 'I don't care about your religion.'" (Complaint, ¶32);

- "Upon information and belief, Ms. Chartrand became upset with Plaintiff's findings regarding the reimbursement delay and complained to her supervisor, Mr. Randolph, about them." (*Id.*, ¶48); and

- "In response, Nedder informed Mr. Randolph of her concerns regarding repeated compliance issues, including improper billings, that had occurred under Ms. Chartrand's watch." (*Id.*, ¶49).

Even if taken as true for the purpose of this Motion to Dismiss, none of these factual allegations establish protected activity under M.G.L. c. 151B, and they do not allege any adverse action or retaliatory conduct by Randolph. Indeed, Paragraph 48 relates to *another employee's*

9

complaint to Randolph. Plaintiff does not allege that Randolph engaged in any retaliatory action as a result of the other employee's alleged complaint. In Paragraph 49, Plaintiff alleges that she informed Randolph of her concerns about compliance issues that arose with another employee. However, this is not protected conduct under M.G.L. c. 151B and further, Plaintiff does not allege that Randolph engaged in any retaliatory action for her alleged protected activity under M.G.L. c. 151B.

Lastly, Plaintiff's allegations in Paragraph 32, even if taken as true (which they are not), do not give rise to a claim of retaliation. Plaintiff has not alleged that Randolph was on the Committee (which he was not) or that he had any involvement in the decision to deny her exemption request or to terminate her employment (because he did not). Isolated remarks *even by decision makers* (which Randolph was not) are not sufficient to prove a subsequent action was motivated by retaliation. *See Costanzo v. City of Marlborough*, No. 02-P-857, 2004 WL 540497, at *4 (Mass. App. Ct., Mar. 18, 2004). Indeed, Plaintiff has not pleaded any adverse action as a result of Randolph's alleged statement and has not alleged that he had any knowledge of her exemption request, or that he had any knowledge of her objection to the Policy. Plaintiff cannot establish a claim of retaliation against Randolph and this claim must be dismissed.

Plaintiff also does not allege that Individual Defendants knew about any of the alleged requests for accommodation or denial thereof. Knowledge of a protected activity required to establish a causal connection between the alleged protected activity and adverse employment action. *See, e.g.*, *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 88 (1st Cir. 2016); *Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79, 85 (1st Cir. 2006) (discussing that a plaintiff cannot establish a prima facie case of retaliation where there is no evidence that the decisionmaker knew of the protected conduct). Plaintiff does not allege that Individual Defendants had any knowledge

10

of any purported protected activity. In sum, Plaintiff has failed to state a claim for retaliation against Dr. Karson, May, or Randolph upon which relief could be granted, and her claim in Count V against them must be dismissed.

### III. Plaintiff cannot establish a claim of aiding and abetting against Dr. Karson, May, or Randolph.

Plaintiff's claim against Dr. Karson, May, and Randolph for violation of M.G.L. c. 151B, § 4(5) for aiding and abetting (Count VI) should be dismissed because she has failed to allege sufficient facts to state a claim for aiding and abetting upon which relief can be granted. Chapter 151B, §4(5), prohibits an individual from aiding, abetting, inciting, compelling, or coercing discrimination or retaliation. To bring an aiding and abetting claim under Chapter 151B, Plaintiff must show that: "(1) that the defendant committed a wholly individual and distinct wrong . . . separate and distinct from the claim in main; (2) that the aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender; and (3) that the aider or abetter **knew** of his or her supporting role in an enterprise designed to deprive [the plaintiff] of a right guaranteed him or her under G.L. c. 151B." *Saari v. Allegro Microsystems, LLC*, 436 F. Supp. 3d 457, 466 (D. Mass. 2020) (quoting *Lopez v. Com.*, 463 Mass. 696, 713 (2012)) (emphasis added). Under this claim, Plaintiff would need to allege that Dr. Karson, May, and/or Randolph engaged in separate and distinct acts from the main alleged wrong, that they shared the same intent as Health Care and Medical Center, and that Dr. Karson, May, and/or Randolph knew of their alleged supporting role in the enterprise designed to deprive her of a right. Plaintiff has failed to do so, and has made only conclusory allegations.

### A. *Plaintiff does not identify the conduct that she alleges Dr. Karson, May, and Randolph aided or abetted.*

At the outset, it is not entirely clear to which "main" claim that Count VI relates for

allegedly aiding and abetting Health Care or Medical Center to engage in discrimination or retaliation. However, Defendants cannot aid or abet Health Care or UMass under Count I (Religious Discrimination in Violation of Title VII) or Count III (Unlawful Retaliation in Violation of Title VII) because there is no individual liability under Title VII. *See Fantini v. Salem State College,* 557 F.3d 22, 29 (1st Cir. 2009) ("[T]here is no individual employee liability under Title VII"). Similarly, Defendants cannot aid and abet Count IV (Wrongful Discharge in Violation of Common Law) because it is not under M.G.L. c. 151B, and there further is no cause of action for a common law retaliation claim. *See Nelson v. Anika Therapeutics, Inc.*, No. 12-P-361, 2013 WL 1715307, at *2 (Mass. App. Ct. Apr. 22, 2013). As discussed in Section II, *supra*, Count V was brought against those individual Defendants and Defendant cannot be aid and abet their own actions. Defendants cannot identify from the Complaint which Count that Plaintiff alleges Defendants aided and abetted, and Plaintiff has not adequately pleaded this claim to allow a reasonable inference that Defendants are liable, and the claim must be dismissed as a matter of law.

### B. *Plaintiff cannot show aiding or abetting Health Care or Medical Center.*

To the extent that Plaintiff claims her aiding and abetting claims against the Individual Defendants relate to Count II (Violation of M.G.L. c. 151B, §4 against Medical Center and Health Care for religious discrimination) and Count V (Violation of M.G.L. 151B, §4(4) against all named defendants for retaliation), Plaintiff fails to state a claim upon which relief can be granted. Plaintiff brought Count V against Dr. Karson, May, and Randolph. The Defendants cannot aid and abet their own conduct. *See Saari*, 436 F. Supp. 3d at 466 (requiring the aider and abetter to be distinct from the alleged principal offender).[4] Thus, this claim fails to the extent Plaintiff alleges aiding

---

[4] As discussed in Section II, *supra*, Count V should be dismissed against Individual Defendants.

and abetting to Count V.

To the extent Plaintiff claims the Individual Defendants aided and abetted Health Care or Medical Center's alleged discrimination, that claim fails as a matter of law. First, Plaintiff has not alleged that Dr. Karson, May, or Randolph committed a "wholly individual and distinct wrong" separate "and distinct from the claim in main." In fact, Plaintiff has not alleged that Individual Defendants *engaged in any wrongful action. See* Complaint, ¶¶30-32, 48-49, and 62 (citing the *only* paragraphs in the Complaint that make any factual allegation concerning any individual Defendant whatsoever). Plaintiff has not alleged any wrong, let alone a separate and distinct wrong, and Plaintiff fails to state a claim upon which relief can be granted. *See Saari v. Allegro Microsystems, LLC*, 436 F. Supp. 3d 457, 466 (D. Mass. 2020) (finding that the employee failed to allege acts of discrimination by employer distinct from the supervisor and did not state a claim for aiding and abetting discrimination, as such discrimination claims against both parties were premised on the same conduct)).

Moreover, Plaintiff has not made one single allegation that Dr. Karson, May, or Randolph "shared an intent to discriminate" not unlike either Medical Center or Health Care. She further has not pled a single factual allegation that the individual Defendants had any *knowledge* of their "supporting role" that was designed to "deprive [Plaintiff] of a right guaranteed" to her under M.G.L. c. 151B. *See id.* Plaintiff does not allege that the Individual Defendants even knew of any of the underlying alleged protected activity. There are no factual allegations to support Dr. Karson, May, or Randolph, "could have prevented" Health Care or Medical Center from discriminating against her based on her religion (*see* Complaint, ¶108), and no factual allegations to support that they aided and abetted in retaliating against Plaintiff "as a result of her exercise of sincerely held religious beliefs" (*see id.*, ¶109). Paragraph 109 also makes conclusory allegations that Dr. Karson,

13

May, and Randolph aided and abetted Medical Center and Health Care in retaliating against her for "reporting on UMass Memorial's questionable, and possibly illegal, delays in reimbursing the federal government" and "for objecting to the defendants' COVID-19 vaccination policy." *See id.*, ¶109. As discussed in Section II, *supra*, Plaintiff's objection to the Policy is not protected under M.G.L. c. 151B, and that fails as a matter of law. *See Mercado v. Manny's T.V. & Appliance, Inc.*, 77 Mass. App. Ct. 135, 139, (2010) (quoting *Falcon v. Leger*, 62 Mass. App. Ct. 352, 362 (2004)); *see also Nelson v. Anika Therapeutics, Inc.*, No. 12-P-361, 2013 WL 1715307, at *2 (Mass. App. Ct. Apr. 22, 2013). Moreover, Plaintiff's alleged complaints about "delays in reimbursing the federal government" are not protected activity under M.G.L. c. 151B. There can be no aiding and abetting under M.G.L. c. 151B for these alleged activities. *See* M.G.L. c. 151B, §4(5) (prohibiting an employer or an employee to "aid, abet, incite, compel or coerce" any of the "acts **forbidden under this chapter**") (emphasis added).

Plaintiff must plead more than conclusory legal allegations under Count VI, and must actually plead factual allegations to survive a motion to dismiss. *See Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012); *A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013). She has not done so here. Plaintiff cannot establish a claim for aiding and abetting upon which relief can be granted and this claim must be dismissed.

## CONCLUSION

For the reasons set forth above, the Court should dismiss Counts V and VI of Plaintiff's Complaint against Defendants Dr. Andrew Karson, Justin May, and John Randolph.

                    Respectfully submitted,

                    ANDREW KARSON, M.D., JUSTIN MAY and JOHN RANDOLPH,

                    By their attorneys,

                    /s/ *Melanie C. Cormier*
                    Diane M. Saunders, Esq. (BBO# 562872)
                    Melanie C. Cormier (BBO# 708037)
                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
                    One Boston Place, Suite 3500
                    Boston, MA 02108
                    Tel: 617-994-5700
                    Fax: 617-994-5701
                    diane.saunders@ogletreedeakins.com
                    melanie.cormier@ogletreedeakins.com

Dated: May 31, 2024

## CERTIFICATE OF SERVICE

     I hereby certify that on May 31, 2024 this document filed through the Court's electronic filing system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                    /s/ *Melanie C. Cormier*
                    Melanie C. Cormier