UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBRA NEDDER | )<br>)<br>) |
| Plaintiff, | ) |
| vs. | )<br>) C.A. No.: 4:23-cv-40012- MRG |
| UMASS MEMORIAL HEALTH CARE, INC., UMASS MEMORIAL MEDICAL CENTER, INC., ANDREW KARSON, M.D., JUSTIN MAY and JOHN RANDOLPH | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

### PLAINTIFF'S OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

In this action, plaintiff Debra Nedder, the former Associate Vice President of Compliance and Chief Compliance Officer for UMass Memorial Health Revenue Cycle and UMass Memorial Medical Group (collectively, "UMass Memorial"), has brought claims for violations of Title VII of the Civil Rights Act and of Massachusetts General Laws, chapter 151B. Nedder has asserted two state law claims against three individual defendants, Andrew Karson, M.D., Justin May and John Randolph (collectively, "the Individual Defendants"), who are senior executives of UMass Memorial and who held seniority and supervisory authority over Ms. Nedder.[1] In Count IV, Nedder asserts that the Individual Defendants engaged in wrongful discrimination, in violation of M.G.L. ch. 151B, §4(4) by causing her to be terminated in retaliation for her exercise of sincerely held religious beliefs. In Count V, Nedder asserts that the Individual Defendants aided and abetted UMass Memorial in its acts of unlawful discrimination in violation of M.G.L. ch. 151B, §4(5).

---

[1] Dr. Andrew Karson served as Chief Medical Officer of UMass Memorial; Justin May served as Vice President of Labor and Employee Relations; and John Randolph served as Vice President and Chief Compliance Officer.

Because Nedder has sufficiently stated a prima facie state case, and because all reasonable inferences must be construed in her favor, Young v. Lepone, 305 F.3d 1, 8 (1st Cir. 2002), the Individual Defendants' Motion to Dismiss the Complaint should be DENIED.

## PROCEDURAL POSTURE

Plaintiff commenced this action on February 3, 2023. On March 28, 2023, in lieu of answering, defendants filed a Motion for a More Definite Statement. On March 12, 2024, the Court (Guzman, J.) granted the Motion for a More Definite Statement and entered an Order directing plaintiff to file an amended complaint. (*See* dkt nr. 27) Nedder filed her First Amended Complaint and Demand for Jury Trial on April 11, 2024. On May 31, 2024, the Individual Defendants filed the present Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Defendants UMass Memorial Health Care, Inc. ("Health Care") and UMass Memorial Medical Center, Inc. ("Medical Center") have not joined in the Motion but have instead filed an Answer to the First Amended Complaint. (*See* dkt nr. 31)

## RELEVANT ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

The essential facts, which are set forth in greater detail in plaintiff's First Amended Complaint and Demand for Jury Trial ("Complaint"), are as follows:

In 2021, plaintiff Debra Nedder was unlawfully discharged from her position as the Associate Vice President of Compliance and Chief Compliance Officer for UMass Memorial Health Revenue Cycle and UMass Memorial Medical Group. Complaint, ¶¶ 13 – 14. Ms. Nedder had been employed by UMass Memorial for over ten (10) years, since 2010. *Id*., ¶ 15. Prior to the events which led to her improper termination, Nedder had been promoted numerous times and had received commendations from her supervisors for exemplary performance and competence. *Id*., ¶¶ 15, 16. Plaintiff's immediate supervisor was defendant John Randolph who held the position of Vice President and Chief Compliance Officer. *Id*., ¶ 6. Each of Mr. Randolph, and the

2

other two individual defendants, Dr. Andrew Karson, who served as Chief Medical Officer and Justin May, who served as Vice President of Labor and Employee Relations, held supervisory and/or superior administrative positions over Ms. Nedder. *Id*., ¶¶ 4, 5, 107.

Beginning in early 2020 and continuing through 2021, as a result of the COVID-19 pandemic, Nedder performed her job functions remotely. *Id*., ¶ 18. In or about September 2021, UMass Memorial adopted a vaccine mandate policy entitled, "COVID-19 Immunization," which stated that, "all Workforce Members are required to be vaccinated against COVID-19 or obtain an approved exemption." *Id*., ¶ 19. The policy also provided that UMass Memorial would "consider and grant medical/disability and religious exemption requests," and that "[t]he process for both exemptions will be in accordance with state and federal law." *Id*., ¶ 20. However, the policy did not identify any procedures that would be applied to evaluate medical, disability or religious exemption requests. *Id.*

Plaintiff applied for a religious exemption from the COVID-19 Immunization policy on October 7, 2021. *Id*., ¶ 22. In her exemption submission, Ms. Nedder explained that she follows biblical teachings, that she had held religious beliefs her entire adult life, and that she had recently completed a four-year education for ministry program strengthening those beliefs. Ms. Nedder also submitted a personal statement further detailing her religious beliefs and the reason for her exemption request, and noted that her recent experience in receiving other vaccines "reinforced [her] religious beliefs against vaccines of any kind." *Id*., ¶¶ 24 - 26. Ms. Nedder's request for an exemption from the COVID-19 Immunization policy was denied. *Id*., ¶ 27. Because of her sincerely held religious beliefs, Ms. Nedder refused to get a COVID-19 vaccination by the December 1, 2021 deadline and she was terminated from her employment the next day, December 2, 2021. *Id*., ¶¶ 40, 41.

Between the time that she applied for an exemption from the COVID-19 Immunization policy and her termination, Ms. Nedder made numerous attempts to engage in a dialogue with her employer to discuss a work accommodation that would have allowed her to perform her job responsibilities remotely (which she had been doing since March 2020), while not violating her religious beliefs, but the defendants refused. *Id.*, ¶¶ 33 – 39. Plaintiff alleges that the Exemption Review Committee, **and the Individual Defendants**, intentionally disregarded documentation that directly contradicted the false information it relied upon (i.e., Ms. Nedder's vaccination history) in denying her exemption request. *Id.*, ¶¶30, 37. Specifically, Mr. May informed Plaintiff that her religious exemption was denied, in part, because she had received a vaccination every year since 2010, which he knew to be false. *Id.*, ¶30. Dr. Karson informed plaintiff that her religious exemption request would be denied if she had *ever* received a vaccine, despite her sincerely held religious beliefs. *Id.*, ¶31. And Nedder's immediate supervisor, Mr. Randolph, told plaintiff that she **had to get vaccinated**, and that "*you know what is expected of you*." Mr. Randolph even stated: "*I don't care about your religion*." *Id.*, ¶32 (emphasis added).

These factual allegations form the basis for Ms. Nedder's claim that the Individual Defendants caused her to be discharged from her employment in retaliation for her exercise of sincerely held religious beliefs, in violation of M.G.L. chapter 151B. Ms. Nedder also contends that her termination was in retaliation for her raising objections to the COVID-19 Immunization policy prior to its adoption, and for raising the alarm about UMass Memorial's failures to timely reimburse the federal government.

Specifically, part of Ms. Nedder's job responsibilities as Chief Compliance Officer included the review and drafting of UMass Memorial's policies and procedures, including the COVID-19 Immunization policy. *Id.*, ¶ 53. Ms. Nedder was a member of the System Policy

4

Committee which reviewed and approved such policies. *Id.* Nedder voted "no" on the proposed COVID-19 Immunization policy because she believed that it did not adequately address risks; it did not contain sufficient information; it failed to address natural immunity; it did not adequately articulate the procedure for addressing requests for accommodation for medical reasons, disabilities and/or religious beliefs; it posed an undue risk to the organization; and because the policy was incomplete, especially in regard to the exemption review process *Id.*, ¶¶ 60 - 63. As further described below, Ms. Nedder asserts that the Defendants retaliated against her, in part, for raising these legitimate objections to the COVID-19 Policy.

Additionally, Ms. Nedder alleges that her termination was in retaliation for her raising concerns about UMass Memorial's failures to timely reimburse the federal government. Specifically, plaintiff was involved in a review of a unit of Defendants, Health Alliance, that owed substantial funds to the federal government. *Id.*, ¶ 44. In the course of that review, Nedder became aware that Health Alliance was extremely late in reimbursing monies owed to the federal government. *Id.*, ¶ 45. Ms. Nedder sought to take administrative action against the employee who was responsible but she was not permitted to do so because UMass Memorial feared that this would be perceived as retaliation against the other employee. *Id.*, ¶ 47. Nedder also informed her supervisor, Mr. Randolph, of her concerns. *Id.*, ¶ 49. The matter was unresolved at the time of Ms. Nedder's termination. *Id.*, ¶¶ 50, 51. In her Complaint, Ms. Nedder asserts that her termination was, in part, in retaliation for her raising concerns about UMass Memorial's systemic failures to timely reimburse the federal government for improperly submitted and paid charges. *Id.*, ¶ 52.

## STANDARD OF REVIEW

The well-established standard of review on a motion to dismiss under Rule 12(b)(6) is that the Court must "accept as true the factual allegations of the complaint and the reasonable inferences that can be drawn from those facts in the plaintiff's favor." Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019); see Foster v. Commissioner of Correction (No. 2), 484 Mass. 1059 (2020); Iannacchino v. Ford Motor Co., 451 Mass. 623, 625 n.7 (2008). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 636 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). What is required at the pleading stage are factual allegations "plausibly suggesting (not merely consistent with)" an entitlement to relief, in order to "reflect[] the threshold requirement" of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id., quoting Bell Atl., 550 U.S. at 557.

In applying this standard of review, the court must determine whether the facts as alleged permit a reasonable inference of defendant's liability *or* a reasonable expectation that discovery will unearth evidence of the defendant's liability. See A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013). See also Rodriguez v. Massachusetts Bay Transportation Authority, 92 Mass. App. Ct. 26, 29 (2017); Trychon v. Massachusetts Bay Transportation Authority, 90 Mass. App. Ct. 250, 251 (2016). The court must "giv[e] credence to all well-pleaded factual averments limned in the amended complaint and indulg[e] all reasonable inferences therefrom in the plaintiff's favor." Young v. Lepone, supra, 305 F.3d at 8.

A Rule 12 motion "is ordinarily not the proper vehicle for testing the factual sufficiency of a plaintiff's claim." Reardon v. Commissioner of Correction, 20 Mass. App. Ct. 946, 947 (1985) (rescript). The court must apply these principles generously. Connerty v. Metropolitan District Commission, 398 Mass. 140, 143 (1986); see Marram v. Kobrick Offshore Fund, Ltd., 442 Mass.

43, 45 (2004). Parties are expected to use discovery, not the pleadings, to learn the details of the claims being asserted. SEC v. Richie, 2008 WL 2938678 at *12 (C.D. Cal. 2008); Rice v. Interactive Learning Systems, Inc., 2007 WL 2325202 at *7 (N.D. Tex. 2007). The liberal pleading standard of Rule 8(a) requires only that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief. See Fed. R. Civ. P. 8(a). A detailed recitation of the evidence is ***not*** required. Hooksett School District v. W.R. Grace & Co., 617 F. Supp. 126, 135 (D.N.H. 1984).

## LEGAL ARGUMENT

The allegations contained in plaintiff's First Amended Complaint are more than sufficient to state actionable claims against the Individual Defendants. The allegations, taken as a whole, articulate the actions which form the basis of plaintiff's claims of retaliation, and of aiding and abetting unlawful discrimination. Plaintiff's employer, acting through the Individual Defendants – all of whom were senior officers of UMass Memorial and held supervisory authority over her – discriminated against Ms. Nedder when she exercised sincerely held religious beliefs. The Individual Defendants also aided and abetted the employers' acts of unlawful discrimination. The Individual Defendants' contention that the Complaint fails to state claims against them, and that the claims should be dismissed under Fed. R. Civ. P. 12(b)(6), is unfounded and should be rejected.

I. **Nedder Has Asserted Facially Valid Claims against the Individual Defendants for the Violation of M.G.L. ch. 151B, §4(4) in Count V of her Complaint**

Section 4(1) of M.G.L. chapter 151B prohibits employers, and their agents, from "discharg[ing] from employment [or] discriminat[ing] against" employees "because of [their] religious creed." Section 4 of chapter 151B provides that it "shall be an unlawful practice... (4) [f]or any person [or] employer... to discharge, expel or otherwise discriminate against any person because [she] has opposed any practices forbidden under this chapter." In her First Amended

7

Complaint, Nedder asserts that the defendants, including the Individual Defendants, violated the provisions of M.G.L. c. 151B, §4(4) by terminating her employment, and refusing to make a reasonable accommodation for her religious beliefs when she requested an exemption from the COVID-19 Immunization policy because of her sincerely held religious beliefs. Thus, in Count V, Nedder claims that the Individual Defendants retaliated against her by causing her to be discharged because of her "religious creed."

Ms. Nedder further alleges that the defendants retaliated against her by using her refusal to obtain a COVID-19 vaccination as a pretext for termination, which occurred shortly after she had raised objections to UMass Memorial's adoption of the COVID-19 Immunization policy. The termination also occurred shortly after Ms. Nedder had raised questions about UMass Memorial's Health Alliance's failure to timely reimburse the federal government, and while that matter was still under investigation. *See* Complaint, ¶¶ 43 - 52. The "temporal proximity" of all of these protected activities with plaintiff's termination is circumstantial evidence, and supports an inference of retaliation sufficient to survive the present motion to dismiss. See Mesnick v. General Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991) ("temporal proximity of an employee's protected activity to an employer's adverse action" is circumstantial evidence that allows retaliation claim to get past summary judgment). See also Mole v. University of Massachusetts, 442 Mass. 582, 592 (2004) ("if adverse action is taken against a satisfactorily performing employee in the immediate aftermath of the employer's becoming aware of the employee's protected activity, an inference of causation is permissible").

Retaliation "is a separate and independent cause of action" under M.G.L. ch. 151B, and prohibits retaliation by making it unlawful to discharge an employee for, *inter alia*, the exercise of their religious beliefs. See Abramian v. President & Fellows of Harvard College, 432 Mass. 107,

8

121 (2000). "To succeed on such a claim the plaintiff must prove that she reasonably and in good faith believed that the [employer] was engaged in wrongful discrimination, that she acted reasonably in response to her belief, and that the [employer's] desire to retaliate against her was a determinative factor in its decision to terminate her employment." Tate v. Department of Mental Health, 419 Mass. 356, 364 (1995). The allegations in the Complaint are sufficient to "raise a right to relief" on plaintiff's claims against the Individual Defendants "above the speculative level." Iannacchino, supra, 451 Mass. at 625 n.7, quoting Bell Atl. Corp., supra, 550 U.S. at 555.

Plaintiff alleges generally that defendants failed to evaluate her request for an exemption to the COVID-19 Immunization policy in good faith and that they failed to consider making a reasonable accommodation that would have allowed her to perform her essential job functions, as she had done for the prior eighteen (18) months. The defendants also based their rejection of plaintiff's exemption request on the false proposition that she had received a vaccination every year since 2010. As alleged in her Amended Complaint, Defendant May was made aware of this error but he took no action to correct the record once it was brought to his attention. *See* Complaint, ¶30. Dr. Karson informed plaintiff that her religious exemption request would be denied if she had **ever** received a vaccine, in spite of her sincerely held religious beliefs which had been strengthened by her recent experiences. *Id.*, ¶31. Ms. Nedder's immediate supervisor, Mr. Randolph, told her that she had to get vaccinated, that "you know what is expected of you," and even stated, "I don't care about your religion." *Id.*, ¶32.

These facts support the *prima facie* elements of plaintiff's claim of retaliation, namely: (i) that Ms. Nedder reasonably and in good faith believed that her employer was engaged in wrongful discrimination; (ii) she acted reasonably in response to this belief, and (iii) the Individual Defendants' desire to retaliate against her was a determinative factor in its decision to terminate

her employment. Tate, supra, 419 Mass. at 364. See also Mesnick, supra, 950 F.2d at 828 (proximity in time between an employee's protected activity and termination is circumstantial evidence of retaliation).

Importantly, Section 4(4) expressly permits claims of retaliation to be brought against "any person" and is not limited in scope to the ***employer***. See Martin v. Irwin Industrial Tool Co., 862 F.Supp.2d 37 (D. Mass. 2012) (surveying sub-sections of M.G.L. ch. 151B, Section 4 and concluding that Section 4(4) applies to "a multitude of individuals and entities," which conclusion is further supported by Massachusetts case law and decisions of the Massachusetts Commission against Discrimination); see Beaupre v. Cliff Smith & Assocs., 50 Mass. App. Ct. 480, 491 (Mass. App. Ct. 2000) ("plain language" of subsection (4) "provides on its face for individual personal liability"); see also Rushford v. Bravo's Pizzeria & Restaurant, 2001 Mass. Comm. Discrim. WL 1602825 at *7-8 (MCAD May 19, 2001) (collecting cases and noting that the Commission "has long recognized and imposed individual liability" under chapter 151B, specifically under subsections (4) and (4A)). In this case, each of the Individual Defendants is a senior executive of UMass Memorial and it is through them that the employer committed its violations of state (and federal) law, including religious discrimination prohibited by M.G.L. chapter 151B.

Nedder's retaliation claim against the Individual Defendants can survive whether or not it is ultimately determined that the corporate defendants engaged in religious discrimination. "A claim of retaliation may succeed even if the underlying claim of discrimination fails, provided that in asserting her discrimination claim, the claimant can 'prove that [she] reasonably and in good faith believed that the [employer] was engaged in wrongful discrimination." Psy-Ed Corp. v. Klein, 459 Mass. 697, 706-07 (2011), quoting Abramian, supra, 432 Mass. at 121. For present purposes, there is no question that plaintiff's Complaint has set forth sufficient allegations to meet

10

this standard.

## II. Nedder Has Also Asserted Valid Claims against the Individual Defendants for the Violation of M.G.L. ch. 151B, §4(5) in Count VI of her Complaint

Section 4(5) of M.G.L. ch. 151B makes it illegal "for any person, whether an employer or an employee... to aid [or] abet... the doing of any of the acts forbidden under this chapter." In Count VI of her Amended Complaint, Nedder has alleged that the Individual Defendants violated Section 4(5) by aiding and abetting UMass Memorial's acts of unlawful discrimination. Specifically, Nedder alleges:

> "Each of the individual defendants, Karson, May and Randolph, could have prevented UMass Memorial from violating Nedder's right to be free from religious discrimination. Instead, the individual defendants aided and abetted UMass Memorial in acts of unlawful discrimination, and in refusing to engage in a dialogue to arrive at reasonable, and easily available accommodation that would have allowed Nedder to retain her position as Associate Vice President of Compliance and Chief Compliance Officer for UMass Memorial Health Revenue Cycle and UMass Memorial Medical Group." (Complaint, ¶108)

> "The individual defendants, Karson, May and Randolph, also aided and abetted Health Care and/or the Medical Center in retaliating against Plaintiff as a result of her exercise of sincerely held religious beliefs, for reporting on UMass Memorial's questionable, and possibly illegal, delays in reimbursing the federal government, and for objecting to the defendants' COVID-19 vaccination policy, all of which are protected activities." (Complaint, ¶109)

As discussed above, Ms. Nedder advised Mr. May that the Exemption Review Committee was relying on false information concerning her vaccination history – namely, that she had received a vaccination *every year* since 2010 – yet he took no action to inform the Committee that this information was false. His refusal to bring accurate information to the Committee's attention when it considered Ms. Nedder's exemption request is a separate and distinct act from the employer's unlawful discrimination and was intentional. Moreover, Mr. May knew or should have known that his actions, or inaction, deprived Ms. Nedder of her right to be free from religious discrimination. Lopez v. Commonwealth, 463 Mass. 696, 713 (2012).

Similarly, Dr. Karson aided and abetted in the unlawful discrimination against Ms. Nedder by stating to her, and presumably to the Exemption Review Committee, that her exemption request would be denied simply because she had received a vaccination at some point in the past. This position, taken by the Vice President of Labor and Employee Relations, undoubtedly influenced the Committee's decision and resulted in Ms. Nedder being terminated as a penalty for her exercise of sincerely held religious beliefs.

The individual who was most hostile to Ms. Nedder's request for a religious exemption to the COVID-19 Immunization policy was her immediate supervisor, Mr. Randolph. He told her that she ***had to get vaccinated***, and that "***you know what is expected of you***." Mr. Randolph even stated: "***I don't care about your religion***." Complaint, ¶32 (emphasis added). These bullying comments clearly illustrate that Mr. Randolph "shared an intent to discriminate" with the employer, and that he had a "supporting role" in the employer's unlawful acts of religious discrimination. Lopez, supra, 463 Mass. at 713.

Lastly, like Section 4(5) of M.G.L. chapter 151B, Section 4(5) expressly permits claims of retaliation to be brought against "any person," whether an employer or an employee who aids or abets the illegal acts of discrimination. That would include each of the Individual Defendants.

## CONCLUSION

For each of the reasons set forth above, and construing the allegations contained in plaintiff's First Amended Complaint liberally, this Court should DENY the Individual Defendants' Motion to Dismiss the Complaint. In the event, however, that this Court concludes that the First Amended Complaint lacks sufficient allegations to support her claims against the Individual Defendants, Nedder requests leave to amend her Complaint to satisfy any perceived deficiency, and that the Court DENY the Motion without prejudice, pending such amendment.

Respectfully submitted,
**DEBRA NEDDER**

By her attorneys,

/s/ *Jon C. Cowen*
Darrell Mook (BBO No. 546754)
*dmook@donovanhatem.com*
Jon C. Cowen (BBO No. 552961)
*jcowen@donovanhatem.com*
**DONOVAN HATEM, LLP**
53 State Street, 8th Floor
Boston, MA 02109
T: (617) 406-4500

Dated: June 14, 2024

## CERTIFICATE OF SERVICE

I, Jon C. Cowen, hereby certify that on June 14, 2024, the foregoing Plaintiff's Opposition to Individual Defendants' Motion to Dismiss First Amended Complaint was filed through the Court's electronic filing system and sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ *Jon C. Cowen*
Jon C. Cowen

4853-5688-8519, v. 1