## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

DEBRA NEDDER,

                         Plaintiff,


          v.

UMASS MEMORIAL HEALTH CARE,
INC., UMASS MEMORIAL MEDICAL
CENTER, INC., ANDREW KARSON, M.D.,
JUSTIN MAY, and JOHN RANDOLPH,

                         Defendants.

Civil Action No. 4:23-cv-40012-MRG

## MEMORANDUM AND ORDER

**GUZMAN, J.**

       This matter comes before the Court on a Motion to Dismiss Counts V and VI [ECF No. 32] of Plaintiff Debra Nedder's First Amended Complaint against individual Defendants Andrew Karson, M.D., Justin May, and John Randolph (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.    BACKGROUND

       Plaintiff Debra Nedder was employed by UMass Memorial Health Care, Inc. and/or UMass Memorial Medical Center, Inc. (collectively, "UMass Parties") from 2010 until December 2, 2021. [ECF No. 1 ("Compl.") ¶¶ 13-15]. At the time of her termination, Nedder held the position of Associate Vice President of Compliance and Chief Compliance Officer for UMass Memorial Health Revenue Cycle and UMass Memorial Medical Group. [Id. ¶ 13]. The Defendants were senior executives at UMass Memorial who held supervisory and/or superior

1

administrative positions to Nedder. [Id. ¶ 107]. Defendant Randolph was Nedder's immediate supervisor. [Id. ¶ 13].

In September 2021, UMass Memorial adopted a COVID-19 vaccination policy (the "Policy") requiring all employees to be vaccinated against COVID-19 or obtain an approved exemption. [Id. ¶ 19]. The Policy provided that UMass Memorial would "consider and grant medical/disability and religious exemption requests," and that the process for reviewing exemptions would be "in accordance with state and federal law." [Id. ¶ 20]. Nedder was a member of the System Policy Committee that reviewed and approved the Policy, and she voted against its adoption. [Id. ¶¶ 53, 60]. She objected to the Policy because she believed it "did not adequately address risks, it did not contain sufficient information, and because it failed to address natural immunity." [Id. ¶ 60]. She also believed the Policy "did not adequately articulate the procedure for addressing requests for accommodation for medical reasons, disabilities and religious beliefs." [Id.]. After Nedder voted against the Policy, Defendant Karson called to inquire why she had voted "no." [Id. ¶ 62]. Nedder explained that she thought the proposed policy posed a risk to the organization and that it was incomplete as to the exemption review process. [Id. ¶ 63].

On October 7, 2021, Nedder submitted a request for a religious exemption from the Policy. [Id. ¶ 22]. In her exemption request, Nedder explained that she follows "biblical teachings" and had "held religious beliefs [her] entire adult life." [Id. ¶ 24]. She submitted a personal statement further detailing her religious beliefs and noting that her recent experience in receiving other vaccines "reinforced [her] religious beliefs against vaccines of any kind." [Id. ¶¶ 24-26]. On October 27, 2021, UMass Memorial's Exemption Review Committee denied Nedder's request for a religious exemption. [Id. ¶ 27]. Defendant May informed Nedder that her

religious exemption was denied in part because she had received a vaccination every year since 2010. [Id. ¶ 30]. Nedder advised May that "Defendants"[1] had an incorrect record of her vaccination history, explaining that she had not been vaccinated since 2019 when she experienced a severe adverse reaction to a flu shot that "solidified her sincere religious beliefs against vaccination." [Id.]. Nevertheless, "Defendants" maintained its denial of her exemption request. [Id.].

Defendant Karson allegedly told Nedder that the Exemption Review Committee was unlikely to approve any religious exemption requests if an employee had ever received a vaccine. [Id. ¶ 31]. Defendant Randolph told Nedder that she had to get vaccinated, stating, "you know what is expected of you," "I don't care about your religion." [Id. ¶ 32].

Nedder attempted on multiple occasions to discuss her religious exemption request with senior executives at UMass Memorial and to seek a reasonable accommodation that would allow her to continue working. [Id. ¶¶ 33-35]. She requested an accommodation that would have allowed her to perform her job responsibilities remotely (as she had been doing since March 2020), to wear personal protective equipment when working on-site, or to change her status from a full-time employee to an independent contractor. [Id. ¶ 35]. UMass Memorial rejected all of these proposals and refused to engage in a dialogue about a reasonable accommodation. [Id. ¶ 36].

Nedder also alleges that during her employment, she raised concerns about UMass Memorial's "systemic failure to timely reimburse the federal government for improperly submitted and paid charges." [Id. ¶ 43]. Specifically, she became aware that UMass Memorial's Health Alliance unit was "extremely late in reimbursing monies owed to the federal

---

[1] The Amended Complaint defines "Defendants" as including the UMass Parties in addition to the individual Defendants. [Compl. ¶ 6].

government." [Id. ¶ 45]. Nedder informed Defendant Randolph of her concerns regarding these compliance issues. [Id. ¶ 49].

Because of her sincerely held religious beliefs, Nedder did not get a COVID-19 vaccination by the December 1, 2021 deadline. [Id. ¶ 40]. UMass Memorial terminated her employment on December 2, 2021. [Id. ¶ 41].

Nedder has asserted six counts in her First Amended Complaint. The Defendants have moved to dismiss Counts V and VI, which are the only claims asserted against them.

## II.    LEGAL STANDARD

A complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). But under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action arguing that it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).

On a motion to dismiss made pursuant to Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and the Court draws "all reasonable inferences in favor of the

plaintiff." <u>Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.</u>, 524 F.3d 315, 320 (1st Cir. 2008) (citing

<u>Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.</u>, 958 F.2d 15, 17 (1st Cir. 1992)).

### III.    DISCUSSION

#### A.  Count V (Mass. Gen. Laws ch. 151B, § 4(4))

Nedder alleges that she was the victim of retaliation. Under Massachusetts law, it is

unlawful for an employer "to discharge, expel or otherwise discriminate against any person

because [she] has opposed any practices forbidden under this chapter or because [she] has filed a

complaint, testified or assisted in any proceeding under section five." Mass. Gen. Laws ch. 151B,

§ 4(4). "Retaliation is a separate and independent cause of action." <u>Abramian v. President &</u>

<u>Fellows of Harv. Coll.</u>, 731 N.E.2d 1075, 1087 (Mass. 2000). In the absence of direct evidence

of retaliatory motive, as is the case here,[2] Nedder bears the burden of establishing a prima facie

case of retaliation. See <u>Dusel v. Factory Mutual Ins. Co.</u>, 52 F.4th 495, 508-09 (1st Cir. 2022)

(explaining that "[i]n the absence of direct evidence of a retaliatory motive," plaintiff must make

out a prima facie case of retaliation (quoting <u>Psy-Ed Corp. v. Klein</u>, 947 N.E.2d 520, 530 (Mass.

2011); <u>Mole v. Univ. of Mass.</u>, 814 N.E.2d 329, 338 (Mass. 2004)). Specifically, Nedder must

show that 1) she engaged in protected conduct, 2) she suffered an adverse employment action,

and 3) a causal connection existed between the protected conduct and the adverse action. See

<u>Ahmed v. Mass. Bay Trans. Auth.</u>, No. 18-cv-10847-ADB, 2020 WL 5260135, at *7 (D. Mass.

Sept. 3, 2020) (citing <u>Fantini v. Salem State Coll.</u>, 557 F.3d 22, 35 (1st Cir. 2009)).[3] At the

---

[2] Without providing any support, Nedder would have this Court apply a framework only appropriate in cases involving direct evidence of retaliatory motive. [ECF No. 34 at 9]. Under such standard, Nedder would have to prove "that [she] reasonably and in good faith believed that the [employer] was engaged in wrongful discrimination, that [she] acted reasonably in response to [her] belief, and that the [employer's] desire to retaliate against [her] was a determinative factor in its decision to terminate [her] employment." <u>Abramian</u>, 731 N.E.2d at 1087-88.

[3] Because direct evidence of retaliatory motive seldomly exists, the First Circuit has adopted a burden-shifting framework to prove motive. See <u>Downing v. Omnicare, Inc.</u>, 299 F. Supp. 3d 218, 225-26 (D. Mass. 2017). If plaintiff does make out a prima facie case, "the burden shifts to the employer 'to articulate a legitimate,

motion to dismiss stage, however, a plaintiff "need not establish all elements of the prima facie

case" and "must simply allege facts that give rise to a plausible inference that retaliation

occurred." Frith v. Whole Foods Mkt., Inc., 38 F.4th 263, 276-77 (1st Cir. 2022) (citing

Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 24 (1st Cir. 2014)).

### 1. Protected Conduct

Turning to the first element in the analysis, Defendants contend that Nedder has not

alleged any protected conduct. In the context of a retaliation claim, an individual engages in

protected conduct if "[s]he has opposed any practices forbidden under [Mass. Gen. Laws ch.

151B] or . . . has filed a complaint, testified or assisted in any proceeding under [Mass. Gen.

Laws ch. 151B, § 5]." Mass. Gen. Laws ch. 151B, § 4(4); see Freadman v. Mass. Port Auth., No.

2084CV02211, 2022 WL 2180237, at *12 (Mass. Jan. 6, 2022). This includes activities "to

protest or oppose statutorily prohibited discrimination," Verdrager v. Mintz, Levin, Cohn, Ferris,

Glovsky & Popeo, P.C., 50 N.E.3d 778, 783 (Mass. 2016), such as the filing of formal charges of

discrimination and "informal protests of discriminatory employment practices, including making

complaints to management," Jacquet v. City of Somerville, No. 18-10167-GAO, 2020 WL

3545535, at *4 (D. Mass. June 30, 2020) (quoting Fantini, 557 F.3d at 32).

Nedder alleges she engaged in protected activity "when she opposed [Defendants']

COVID-19 vaccination mandate," [Compl. ¶ 101], and "when she raised her concerns about her

reasonable accommodation denial to senior management, [id. ¶ 102]. Turning to the first

allegation, Defendants claim that Nedder's objection to the COVID-19 vaccination policy does

---

nondiscriminatory [or nonretaliatory] reason for its employment decision.'" Wright v. CompUSA, Inc., 352 F.3d
472, 478 (1st Cir. 2003) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991)). If the employer
successfully meets this burden, the burden shifts again and the plaintiff must then show "'that the proffered
legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus.'"
Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 46 (1st Cir. 2010) (quoting Roman v. Potter, 604 F.3d 34,
39 (1st Cir. 2010)).

not consist of protected activity. Specifically, they contend that Nedder's vote against the policy was not cast in opposition to a discriminatory practice and was not in itself a forbidden practice under Mass. Gen. Laws ch. 151B. [ECF No. 33 at 6-7]. Defendants are correct that Nedder's vote cannot be said to raise a complaint, either formal or informal, because her vote cannot be said to put Defendants on notice that Nedder believed a discriminatory or unlawful practice was occurring. See Downey v. Johnson, No. 1884CV01875-C, 2021 WL 4515436, at *22 (Mass. Oct. 1, 2021) (explaining that "merely lobbing a vague charge of discrimination at an employer will not suffice"). When Karson inquired why she had voted against the policy, Nedder explained that "she thought the policy posed an undue risk to the organization and was incomplete, especially in regard to the exemption review process." [Compl. ¶¶ 62-63]. For Nedder's statement to constitute protected activity, she is not required to show that the policy was, in fact, unlawful, but "only that . . . she had a good faith, reasonable belief." Downey, 2021 WL 4515436, at *22 (quoting Collazo v. Bristo-Myers Squibb Mfg., 617, F.3d 39, 48 (1st Cir. 2010)). The record reveals that Nedder's intentions in voting against the policy were not to protest the policy because it was unlawful. Indeed, Nedder alleges that her vote was "cast objectively in her professional capacity, and not influenced by her personal beliefs or circumstances." [Compl. ¶ 61]. Moreover, the fact that Nedder believed that the proposed policy "did not adequately articulate the procedure," [id. ¶ 60], or that it was "incomplete . . . in regard to the exemption process review," [id. ¶ 63], cannot plausibly raise an intention to protest unlawful activity in light of her own acknowledgement that the proposed policy stated that "UMass Memorial would 'consider and grant medical/disability and religious exemption requests,' . . . in accordance with state and federal law." [Id. ¶ 57]. In other words, while the proposal did not elaborate on the exemption review process at the time it was put up for vote on or about September 13, 2021,

Nedder cannot be said to have had a "good faith, reasonable belief" that the proposal was unlawful when it in fact said that it would consider exemption requests in accordance with federal and state law. See Downey, 2021 WL 4515436, at *22.

Next, we analyze Nedder's allegation that she engaged in protected conduct when she raised concerns to senior management about the denial of her reasonable accommodation. Specifically, Nedder alleges that, after May informed her that her religious exemption was denied, in part, because she had received a vaccination every year since 2010, she advised "May and the Defendants" that they had an incorrect vaccination record. [Compl. ¶ 30]. Nedder also claims that she requested meetings with "senior executives of UMass Memorials, including its general counsel" and "Kate Eshghi, who was then UMass Memorial's Senior Vice President and General Counsel," to further discuss her religious exemption request and to seek a reasonable accommodation that would have allowed her either to work remotely, wear personal protective equipment (PPE) when working on-site, or to change her status from a full-time employee to an independent contractor. [Id. ¶¶ 33-35].

These actions consist of protected conduct. By requesting a religious exemption from the vaccination policy, challenging the factual basis for the denial of her application, and seeking an accommodation, [see Compl. ¶ 23], Nedder effectively opposed the potential application of the vaccination policy in a manner that would discriminate against her religious beliefs, Verdrager, 50 N.E.3d at 783; Jacquet, 2020 WL 3545535, at *4. When Nedder submitted her COVID-19 Vaccination Religious Exemption Form, [id. ¶ 22], she directly invoked her right to be free from religious discrimination and her right to reasonable accommodation for her religious beliefs— rights explicitly protected by Chapter 151B. We have consistently recognized that requesting an accommodation is protected activity. See, e.g., Gauthier v. Sunhealth Specialty Servs., Inc., 555

8

F. Supp. 2d 227, 244 (D. Mass. 2008) (holding that plaintiff engaged in protected conduct under Massachusetts law when she requested accommodations, even if the requested accommodations may have been unreasonable); Hines v. Ellis Nursing Home, Inc., No. 23-cv-10874-DJC, 2023 WL 7619035, at *5 (D. Mass. Nov. 14, 2023). Nedder's allegations that she held sincere religious beliefs that conflicted with the vaccination policy, [Compl. ¶¶ 24-26], that she was denied an exemption based partly on incorrect information, [id. ¶ 30], and that she was told "I don't care about your religion," [id. ¶ 32], plausibly support an inference that Nedder had a reasonable and good faith belief that her employer was engaging in discrimination, Downey, 2021 WL 4515436, at *22. As such, Nedder's formal exemption request falls squarely within the ambit of protected conduct.

### 2. Adverse Employment Action

Turning to the second element of the analysis, Defendants do not dispute that Nedder's termination constituted an adverse employment action. Instead, Defendants contend that Nedder has failed to allege any adverse action as to any of the Defendants. [ECF No. 33 at 8-11]. That contention is inappropriate at this stage of the analysis. Whether Defendants had any knowledge of Nedder's protected conduct and involvement in her termination is an inquiry better suited under the lens of causation. See Soni v. Wespiser, 239 F. Supp. 3d 373, 386 (D. Mass. 2017) ("Incorporated into the third element is the requirement that the plaintiff show that the defendant had knowledge of the protected conduct." (quoting Navarro v. U.S. Tsubaki, Inc., 577 F. Supp. 2d 487, 500-01 (D. Mass. 2008)); Brisette v. Franklin Cnty., Sheriff's Office, 235 F. Supp. 2d 63, 93 (D. Mass. 2003) ("In order to prove causation, the plaintiff must demonstrate at a minimum that 'the alleged retaliators knew of the plaintiff's protected activity and that a retaliatory motive played a part in the adverse employment actions alleged.'" (quoting Lewis v. Gillette, Co., 22 F.3d 22, 24

(1st Cir. 1994)). Nedder's termination constitutes an adverse employment action. See <u>Toussaint v.</u> <u>Brigham & Women's Hosp., Inc.</u>, 166 F. Supp. 3d 110, 118 (D. Mass. 2015) (citing <u>Pearson v.</u> <u>Mass. Bay Transp. Auth.</u>, 723 F.3d 36, 42 (1st Cir. 2013)); <u>Martinelli v. Bancroft Chophouse,</u> <u>LLC</u>, 357 F. Supp. 3d 95, 103 (D. Mass. 2019) ("To constitute an adverse employment action, the conduct 'must materially change the conditions' of plaintiff's employment.").

### 3. <u>Causation</u>

At the last step of the prima facie analysis, "a plaintiff must establish a but-for causal connection between the protected activity and the employment action." <u>Posada v. ACP Facility</u> <u>Servs., Inc.</u>, 389 F. Supp. 3d 149, 158 (D. Mass. 2019) (citing <u>Univ. of Tex. Sw. Med. Ctr. v.</u> <u>Nassar</u>, 570 U.S. 338, 362, 2013)); <u>see</u> <u>Cadigan v. Align Tech., Inc.</u> No. 1:19-cv-11462-ADB, 2020 WL 3799191, at *10 (D. Mass. July 7, 2020). In other words, there must be a showing that "the employer's desire to retaliate against the employee . . . [was] a determinative factor in its decision to take action." <u>Downey</u>, 2021 WL 4515436, at *23 (quoting <u>Psy-Ed Corp.</u>, 947 N.E.2d at 530). This causal connection "may be shown either directly or by inference." <u>Psy-Ed Corp.</u>, 947 N.E.2d at 532. At a minimum, the plaintiff must demonstrate that "the alleged retaliators knew of the plaintiff's protected activity and that a retaliatory motive played a part in the adverse employment actions alleged." <u>Brisette</u>, 235 F. Supp. 2d at 93 (quoting <u>Lewis</u>, 22 F.3d at 24); <u>see</u> <u>Soni</u>, 239 F. Supp. 3d at 386. "[I]f adverse action is taken against a satisfactorily performing employee in the immediate aftermath of the employer's becoming aware of the employee's protected activity, an inference of causation is permissible." <u>Mole</u>, 814 N.E.2d at 339.

Starting with Karson, the Amended Complaint alleges that he "stated to Nedder that the Exemption Review Committee was unlikely to approve any religious exemption requests if the employee had ever received a vaccine, suggesting to Plaintiff that, as a result, she would be

denied a religious exemption." [Compl. ¶ 31]. This statement suggests that Karson knew about Nedder's religious exemption request at some point during the review process. Nevertheless, the Amended Complaint fails to allege facts suggesting that Karson had a retaliatory motive, let alone that such motive was a determinative factor in terminating Nedder. Karson's alleged statement about the Exemption Reviews Committee's practices does not, on its own, demonstrate retaliatory motive. Rather, it appears to be an observation or prediction about how the Exemption Review Committee might rule based on its general practices. Importantly, the Amended Complaint does not allege that Karson was on the Exemption Review Committee; had any decision-making authority regarding Nedder's exemption request; participated in or influenced Nedder's termination decision; or expressed any personal animus toward Nedder for requesting a religious exemption.

Further, while Karson's alleged inquiry about why Nedder voted against the proposed policy, [see id. ¶ 62], shows that he was aware of her vote, the Amended Complaint does not connect this awareness to any retaliatory action. In any event, Nedder's vote does not constitute protected activity under Chapter 151B. See supra. Without allegations establishing both knowledge of protected conduct and a retaliatory motive that was a determinative factor in Nedder's termination, Nedder fails to plausibly allege but-for causation against Karson. Accordingly, Count V will be dismissed as to Karson.

As to May, the Amended Complaint clearly establishes May's knowledge of Nedder's religious exemption request, as he "informed Plaintiff that her religious exemption was denied, in part, because she had received a vaccination every year since 2020." [Compl. ¶ 30]. Nedder also alleges she "advised May and the Defendants that they had an incorrect record of her

vaccination history."[4] [Id. ¶ 30]. These allegations provide a stronger basis for inferring a

retaliatory motive. First, May allegedly communicated that Nedder's exemption was denied

partly based on incorrect information about her vaccination history. When Nedder pointed out

this error, "Defendants subsequently took the position that regardless of the error in its record of

her vaccine history, the Committee's denial of her religious exemption would remain

unchanged." [Id.]. This persistence in denying her exemption despite acknowledging an error in

the basis for that denial could suggest a pretextual rationale. Second, May signed both the letter

warning Nedder of possible termination and the termination letter itself, showing his direct

involvement in implementing the adverse action. [See ECF Nos. 28-2 & 28-3]. While the

Amended Complaint does not explicitly state that May had decision-making authority regarding

the exemption or termination, his role in communicating both decisions and the close temporal

proximity between Nedder's protected conduct and her termination provide sufficient grounds at

this stage to infer that a retaliatory motive connected to her religious exemption request may

have been a determinative factor in the adverse action. As such, the motion to dismiss as to

Count V will be denied as to May.

Finally, as to Randolph, the Amended Complaint directly establishes his knowledge of

Nedder's religious exemption request through his alleged statement "I don't care about your

religion," [id. ¶ 32], made during a meeting on November 4, 2021, shortly before Nedder's

termination. Randolph's alleged statement provides strong evidence of retaliatory motive, as it

directly expresses animus towards the protected conduct and characteristic. Additionally,

Randolph allegedly told Nedder "you had to get vaccinated" and "you know what is expected of

---

[4] As noted supra, the Amended Complaint contains several generalized references to "Defendants." While the Court
takes note that the Amended Complaint defines the terms as collectively referring to UMass Memorial Health Care,
Inc., UMass Memorial Medical Center, Inc., Karson, May, and Randolph, [Compl. ¶ 6], these references are too
generalized and vague to plausibly state a claim against the Defendants.

you." [Id.]. These statements, made by her immediate supervisor approximately one month

before her termination, suggest pressure to abandon her religious exemption request and could

support an inference that Randolph's animus toward her religious beliefs influenced employment

decisions affecting her. The question remains whether Randolph's alleged animus was a

determinative factor in Nedder's termination. The Amended Complaint identifies Randolph as

Nedder's "immediate supervisor," [id. ¶¶ 6, 32], which supports an inference that he had some

authority or influence over employment decisions affecting her. However, the Amended

Complaint does not explicitly allege that Randolph participated in the final termination decision

or influenced the Exemption Review Committee. At the motion to dismiss stage, however,

evidence of retaliatory animus combined with supervisory authority and close temporal

proximity to the adverse action are sufficient to plausibly allege that a retaliatory motive may

have been a determinative factor. See Frith, 38 F.4th at 277-78 (explaining that plaintiffs "need

not establish all elements of the prima facie case" on a motion to dismiss, but "must simply

allege facts that give rise to a plausible inference that retaliation occurred").

For the foregoing reasons, Defendants' motion to dismiss will be granted as to Karson,

but will be denied as to May and Randolph.

## B.  Count VI (Mass. Gen. Laws ch. 151B, § 4(5))

Nedder alleges that Defendants aided and abetted UMass Memorial Health Care, Inc. and

UMass Memorial Medical Center, Inc. (collectively, the "UMass Parties") in acts of unlawful

discrimination and retaliation against her for exercising her sincerely held religious beliefs,

reporting questionable and possibly illegal practices, and objecting to the proposed COVID-19

vaccination policy. [Compl. ¶¶ 108-09]. Under Massachusetts law, an aiding and abetting claim

requires proof "(1) that the defendant committed a wholly individual and distinct wrong . . .

separate and distinct from the claim in main; (2) that the aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender; and (3) that the aider or abetter knew of his or her supporting role in an enterprise designed to deprive [the plaintiff] of a right guaranteed him or her under [Chapter] 151B." Connolly v. Woburn Pub. Schs., 659 F. Supp. 3d 92, 115 (D. Mass. 2023) (quoting Lopez v. Commonwealth, 978 N.E.2d 67, 82 (Mass. 2012)). An aiding and abetting claim is entirely derivative of a discrimination claim. Fisher v. Town of Orange, 885 F. Supp. 2d 468, 476-77 (D. Mass. 2012) (citing Abramian, 731 N.E.2d at 1088). This means that in addition to the "individual and distinct wrong" that Defendants must be alleged to have committed, the Amended Complaint must also allege that commission of an underlying act of discrimination by the principal offender, here the UMass Parties. Lopez, 978 N.E.2d at 82 (citing Russell v. Cooley Dickinson Hosp., Inc., 772 N.E.2d 1054, 1066 n.7 (Mass. 2002)).

Although the Amended Complaint does not express which claim the Defendants aided and abetted, the Court agrees with Defendants that, as a matter of law, they could have only aided and abetted the UMass Parties' alleged discrimination claim.[5] Upon review of the Amended Complaint, the Court finds that Nedder fails to show individual and distinct acts in a common scheme to amount to aiding and abetting. With respect to May, Nedder alleges only that he informed her that her religious exemption was denied partly because she had received vaccinations every year since 2010, and that when she advised him that this vaccination history

---

[5] Defendants cannot aid and abet Count I (Religious Discrimination in Violation of Title VII) and Count III (Unlawful Retaliation in Violation of Title VII) because Title VII does not provide for individual liability. Fantini, 557 F.3d at 31 ("There's no individual liability under Title VII."). Defendants cannot also aid and abet Count IV (Wrongful Discharge in Violation of Common Law) because it is based on common law. See Mass. Gen. Laws ch. 151B, § 4(5) (prohibiting aiding and abetting for "any of the acts forbidden under this chapter" (emphasis added)). Further, Defendants cannot aid and abet their own conduct as to Count V (Retaliation in Violation of Mass. Gen. Laws ch. 151B, § 4(4)). See Saari v. Allegro Microsystems, LLC, 436 F. Supp. 3d 457, 466 (D. Mass. 2020) (granting motion to dismiss as to aiding and abetting claim because discrimination charges were premised on the same conduct).

14

was incorrect, he took no action to correct the record. [Compl. ¶ 30]. These allegations do not constitute a "wholly individual and distinct wrong" separate from the UMass Parties' alleged discrimination. Rather, they describe May acting in his capacity as an agent of the UMass Parties, communicating the Exemption Review Committee's decision and failing to take action to correct an error in Nedder's records. See Soni, 239 F. Supp. 3d at 388 ("Merely consenting to or failing to object to discriminatory conduct is not a separate and distinct wrong.").

Similarly, with respect to Karson, Nedder alleges only that he stated that the Exemption Review Committee was unlikely to approve religious exemption requests if the employee had ever received a vaccine, [Compl. ¶ 31], and that he called to inquire why she had voted against the proposed vaccination policy, [id. ¶ 62]. Again, these allegations do not describe a "wholly individual and distinct wrong" separate from the UMass Parties' alleged discrimination. They describe Karson explaining the likely approach of the Exemption Review Committee and inquiring about Nedder's vote on the proposed policy. Without more, these allegations do not raise any plausible inference that Karson individually committed a distinct wrong apart from the UMass Parties.

As for Randolph, Nedder alleges that he told her "you know what is expected of you" and "I don't care about your religion." [Id. ¶ 32]. While these statements are certainly concerning, they do not constitute a "wholly individual and distinct wrong." The Amended Complaint alleges no plausible factual allegation from which that inference could be made. In isolation, these allegations merely describe Randolph's expression of the UMass Parties' expectation that employees comply with the vaccination policy. The fact that Randolph apparently consented to or failed to object to a discriminatory practice is insufficient to establish a distinct wrong for purposes of an aiding and abetting claim. See Soni, 239 F. Supp. 3d at 388.

Because Nedder has failed to allege that any of the Defendants committed a "wholly individual and distinct wrong" separate from the discrimination allegedly committed by the UMass Parties, her aiding and abetting claim fails as a matter of law.

Even assuming arguendo that Nedder had successfully alleged that each Defendant committed a "wholly individual and distinct wrong" to satisfy the first prong, her aiding and abetting claim would still fail on the second and third prongs. Regarding the second prong—that the alleged aider or abetter shared an intent to discriminate similar to the principal offender—Nedder's allegations are conclusory at best. The Amended Complaint contains no specific factual allegations that any Defendant harbored any discriminatory intent based on religion. Randolph's isolated statement, while concerning, does not sufficiently establish that he shared the UMass Parties' alleged intent[6] to discriminate against Nedder. Although the statement is dismissive of Nedder's religious concerns, it appears in the context of urging her compliance with the vaccination policy that applied to all employees. The statement, standing alone without additional facts connecting it to discriminatory animus in the decision-making process, fails to plausibly establish that Randolph shared an intent to discriminate "not unlike that of the alleged principal offender" as required for an aiding and abetting claim. Lopez, 978 N.E.2d at 82. As for the third prong—knowledge of a supporting role in an enterprise designed to deprive Nedder of a right guaranteed to her under Chapter 151B—the Amended Complaint similarly lacks factual content suggesting that the Defendants knew they were participating in such an enterprise. The allegations that May failed to correct vaccination records, Karson made a general statement about exemption approvals, and Randolph made insensitive remarks about religion do not,

---

[6] Indeed, the Amended Complaint appears to be devoid of any allegations detailing the UMass Parties' discriminatory intent.

without more, plausibly suggest knowledge of participation in a discriminatory scheme.

Accordingly, the motion to dismiss must be granted as to Count VI.

###    IV.    CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Count V is dismissed as to Defendant Karson, but may proceed as to Defendants May and Randolph. Count VI is dismissed in its entirety.


**SO ORDERED.**


Dated: March 18, 2025

 */s/ Margaret R. Guzman*
Margaret R. Guzman
United States District Judge